UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00061-CHL

**MARK MCDONALD ,**                                                                                    **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY ,**                                          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the complaint (DN 1) of Plaintiff Mark McDonald ("McDonald") seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g). On August 11, 2020, McDonald filed his fact and law summary (DN 14), and in response, on October 28, 2020, the Commissioner filed his fact and law summary (DN 19). The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12.) Therefore, this matter is ripe for review.

**I.      BACKGROUND**

On May 11, 2016, McDonald applied for Disability Insurance Benefits ("DIB"), alleging an onset date of January 1, 2011.[1] (DN 11-3, at PageID # 102, 109; DN 11-6, at PageID # 215.) McDonald's application was denied initially on July 13, 2016, (DN 11-4, at PageID # 121), and on December 13, 2016, McDonald's claims were again denied on reconsideration. (*Id.*, at PageID # 129.) An Administrative Law Judge ("ALJ") conducted a hearing on McDonald's application on September 13, 2018. (DN 11-2, at PageID # 82-98.) During the hearing, the ALJ heard testimony from McDonald, who was assisted by a representative, as well as vocational expert

---

[1] Although the protective filing date for McDonald's application is May 11, 2016, the record shows that Disability Determination Services received his complete application on June 13, 2016. (DN 11-3, at PageID # 109.)

Robert G. Piper. (*Id.*) In a decision dated December 3, 2018, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled, and in doing so, made the following findings:

1. The claimant met the insured status requirements of the Social Security Act on December 31, 2015.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2011, through his date last insured of December 21, 2015 (20 CFR 404.1571 *et seq.*)

3. Through the date last insured, the claimant had the following severe impairments: rheumatoid arthritis and chronic obstructive pulmonary disease (COPD) (20 CFR 4041520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one or more of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except was further limited to: no climbing of ladders, ropes, or scaffolds; frequent but not constant handling and fingering; could occasionally reach overhead; and should have avoided concentrated exposure to temperature extremes, high humidity, fumes, odors, dusts, gases, and poor ventilation.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 4, 1964, and was 51 years old, which is defined as a younger individual age 18-49, on the date of last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

    9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

On November 26, 2019, the Appeals Council denied McDonald's request for review, at which time the ALJ's decision became the final decision of the Commissioner. (DN 11-2, at PageID # 52.) McDonald timely filed his complaint on January 28, 2020. (DN 1.)

## II.     DISCUSSION

### A. Standard of Review

The Court may review the final decision of the Commissioner; however, the Court may only consider whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" is "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the Court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the

Commissioner's decision can be justified by the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520. In summary, the evaluation process proceeds as follows:

> (1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "yes," the claimant is disabled. If the answer is "no," procced to the next step.
>
> (3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
>
> (4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id.* The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden only shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F. 3d 417, 423 (6th Cir.

4

2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. McDonald's Contentions

McDonald contends that the ALJ's improperly discounted the opinion of McDonald's treating physician in assessing McDonald's RFC, and that as a result, the ALJ's RFC determination is not supported by substantial evidence. (DN 14-1, at PageID # 974–77.)

#### a. Opinion of Dr. Hammer

Since McDonald filed his applications prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply to the ALJ's assignment of weight to the medical opinions in the record. The regulations require the ALJ to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c). If controlling weight is not assigned to the treating source's opinion, the ALJ must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source. 20 C.F.R. § 404.1527(c).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion

> and the individual become weaker." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).
>
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. *Cole v. Astrue*, 661 F.3d 931, 939

(6th Cir. 2011) (citing *Rogers v. Comm'r*, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" *Cole*, 661 F.3d at 937.

McDonald argues that the ALJ erred in not giving controlling weight to the opinion of his treating physician, Dr. Robert G. Hammer, M.D. ("Dr. Hammer"). (DN 14-1, at PageID # 974.) Dr. Hammer was McDonald's primary care physician beginning in 2014, and the record includes treatment records by Dr. Hammer through September 2017. (DN 11-2, at PageID # 87; DN 11-7, at PageID # 299–238, 449–551, 598–631.) In an undated and unsigned "Arthritis Medical Source Statement" attributed to Dr. Hammer, Dr. Hammer noted reduced range of motion, tenderness, reduced grip strength, and swelling. (DN 11-7, at PageID # 300.) Dr. Hammer opined that prior to December 31, 2015, McDonald's date last insured, McDonald was able to sit and stand for one hour at a time, sit at least six hours in an eight-hour workday, and stand or walk for about four hours in an eight-hour workday, lift fewer than ten pounds frequently and up to ten pounds occasionally, and rarely twist, stoop, crouch, squat, and climb ladders and stairs. (*Id.*, at PageID # 301–02.) Dr. Hammer opined that McDonald would need a job that permits alternating from sitting, standing, and walking at will, and a ten-minute break every one to two hours. (*Id.*, at PageID # 302.)

In assessing the medical opinion evidence in the record, the ALJ noted that McDonald's "primary care physician, Dr. Hammer, endorses more sedentary limitations with the need additional breaks going back prior to his date last insured." (DN 11-2, at PageID # 73.) The ALJ assigned Dr. Hammer's assessment "limited weight," finding that "it is not consistent with the largely normal treating source exam findings noted above as well as the sporadic treatment history, inconsistent complaints for treatment, and other factors." (*Id.*) The ALJ noted that Dr. Hammer

cited some objective signs, including reduced range of motion in the joints of his hands and swelling, tenderness, and reduced grip, but found that the assessment "is not otherwise well-cited, particularly with regard to objective signs in his lower extremities consistent with he need for sedentary work restrictions." (*Id.*)

McDonald disputes that Dr. Hammer's opinion was not supported by objective medical evidence. (DN 14-2, at PageID # 975–76.) McDonald says that his "hands, wrists, elbows, and shoulders regularly exhibited decreased ranges of motion and swelling." (*Id.*, at PageID # 975.) With respect to objective signs to his lower extremities, McDonald noted that his rheumatologist, "Dr. Takagishi[,] regularly noted tenderness in the knees and MTP joints in the feet." (*Id.*) McDonald notes that "[p]ainful and reduced hip ranges of motion were also observed later on, with positive Scour and FABER testing bilaterally." (*Id.*, at PageID # 976.) McDonald concedes that his hip issues were only noted after his date last insured but argues that "they corroborate Dr. Hammer's limitations nonetheless." (*Id.*)

Addressing the ALJ's finding that McDonald's past treatment is inconsistent with Dr. Hammer's assessment, McDonald says that "treating sources regularly tried to manage his condition with Prednisone, but it was only when he was able to see a rheumatologist that they were able to adequately manage his arthritis." (*Id.*) Finally, McDonald argues that his lack of frequent treatment prior to his date last insured is not a good reason to doubt Dr. Hammer's assessment, because the record indicates that McDonald did not have health insurance during the relevant period and, "[w]hile Plaintiff did not receive treatment from a rheumatologist until later on, he did frequently treat for his rheumatoid arthritis in ways that he could afford." (*Id.*, at PageID # 977.)

The ALJ's decision sufficiently addresses the supportability of Dr. Hammer's opinion. The ALJ noted the objective findings cited in Dr. Hammer's medical source statement, including

8

reduced range of motion in the joints of his hands and swelling, tenderness, and reduced grip. (DN 11-2, at PageID # 73.) The Court notes that Dr. Hammer recorded these findings by checking four corresponding boxes on a form list of "objective signs"; he did not specify what diagnostic technique indicated each of the findings. (DN 11-7, at PageID # 300.) As the ALJ observed, the opinion did not include specific objective findings concerning McDonald's lower extremities, which would substantiate, for example, Dr. Hammer's restrictive standing and walking limitation. Despite McDonald's claim that "significant objective evidence supports Dr. Hammer's opinion," (DN 14-1, at PageID # 975), each example McDonald cites in support of that claim shows objective findings made *after* his date of last insured, in some cases, years after. (DN 11-6, at PageID # 504, 542, 568, 572, 577; DN 11-8, at PageID # 643, 646, 665) (2016 treatment records); (DN 11-6, at PageID # 618; 11-8, at PageID # 686, 714, 689) (2017 treatment records); (DN 11-8, at PageID # 865) (2018 treatment record). The ALJ did not ignore these findings, and explicitly discussed many of the same examples in finding that "it is only after his date of last insured that his record corroborates . . . clinical findings consistent with the need for additional limitations." (DN 11-2, at PageID # 72.) The ALJ also explained that more recent records "do[] not necessarily best reflect his functioning during the years at issue." (*Id.*)

The ALJ's decision also sufficiently addresses the consistency of Dr. Hammer's opinion with other substantial evidence on the record. For example, the ALJ noted that during a consultation with Dr. Hammer in December 2014, McDonald reported shortness of breath during exertion and arthritis pain, but that his examination revealed no fatigue or gait issues, normal breath sound and effort, and normal muscle tone and coordination. (*Id.*, at PageID # 72.) The ALJ also noted that in subsequent visits in January and August 2015, there were "transient reports of symptoms and no major exam findings work-up or treatment changes . . . ." (*Id.*) Finally, the ALJ

9

noted an ER visit to treat shortness of breath in November 2015 at which time "x-rays were consistent with emphysema and fibrosis, but no acute airway disease." (*Id.*) The ALJ concluded that these "largely normal treating source exam findings," are inconsistent with Dr. Hammer's "sedentary level restrictions." (*Id.*, at PageID # 73.) The ALJ did not err in determining that McDonald's "sporadic treatment history [and] inconsistent complaints for treatment" undermined Dr. Hammer's opinion. (*Id.*) The ALJ acknowledged McDonald's potential lack of access to medical care, stating that this factor was "not dispositive due to his lack of insurance." (*Id.*, at PageID # 72.) The ALJ clarified, however, that even when McDonald was seen by medical providers, his treatment "was incredibly sporadic and wholly conservative, and he did not make complaints consistent with the [alleged] severity and scope . . . ." (*Id.*) The record shows that despite his uninsured status, McDonald received medical treatment throughout the relevant period. McDonald "cites no evidence that indicates that [his providers] w[ere] unable or unwilling to provide him with more aggressive treatment options for his pain and other symptoms." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 120 (6th Cir. 2016). Thus, it was not improper for the ALJ to conclude that the conservative treatment he received was inconsistent with the severe restrictions Dr. Hammer recommended.

In sum, the Court finds that the ALJ's determination regarding the supportability and consistency of Dr. Hammer's opinion is supported by substantial evidence. As such, the ALJ was not required to afford the opinion controlling weight. The ALJ, accordingly, was then required to examine the factors from 20 C.F.R. § 404.1527(c) and give "good reasons" for her decision. Although the ALJ did not cite explicitly to the factors in the regulations, she mentioned information relevant to these factors in her analysis. For example, the ALJ identified Dr. Hammer as McDonald's primary care physician and noted that "he started seeing Dr. Hammer for primary

10

care in 2014." (DN 11-2, at PageID # 71–72.) The ALJ cites Dr. Hammer's treatment from 2014 to 2016 and describes the nature of the treatment. (*Id.*, at PageID # 72.) Further, as described above, the ALJ addressed the consistency and supportability of Dr. Hammer's opinion. While the ALJ could have been more detailed in assessing Dr. Hammer's opinion, his analysis provides "good reasons" for assigning the opinion limited weight. Despite McDonald's disagreement with how the ALJ evaluated the relevant factors, the ALJ's decision to award limited weight to Dr. Hammer's opinion is supported by substantial evidence and comports with applicable law.

### b. RFC Determination

The RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The ALJ makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC finding the ALJ must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a).

While opinions from treating and examining sources are considered on the issue of RFC, the ALJ is responsible for making that determination. 20 C.F.R. § 404.1527(d). There is also a difference between a medical opinion and an RFC Assessment prepared by the ALJ. The medical opinion is submitted by a medical source and expresses impairment-related functional limitations. 20 C.F.R. §§ 404.1513(a)(2), 404.1527(a)(1). By contrast, the RFC Assessment is the ALJ's ultimate finding of what the claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546.

Here, McDonald objects to the ALJ's determination that Plaintiff's RFC permits light work. (DN 14-1, at PageID # 974.) However, she does not cite any specific error warranting

11

remand other than the failure to assign Dr. Hammer's opinion controlling weight. (*Id.*) Therefore, any such arguments are waived. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion). McDonald appears to suggest that the ALJ should have adopted in full Dr. Hammer's restrictions. (*See* DN 14-1, at PageID # 971, 974–77.) However, as discussed above, the ALJ assigned Dr. Hammer's opinion limited weight. The ALJ also rejected the opinion of the state agency physician that McDonald had not severe physical impairment during the relevant period. (DN 11-2, at PageID # 72–73.) Instead, the ALJ found that evidence of shortness of breath and joint pain in the record supported a finding that McDonald had the RFC to perform light work with certain postural and environmental limitations. (*Id.*, at PageID 70–73.) After reviewing the evidence in the record and the decision, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

### III. ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the final decision of the Commissioner of Social Security is **AFFIRMED** and this action is **DISMISSED with prejudice**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

September 29, 2021

cc: Counsel of record